**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
MARIE A. MCCRARY (State Bar No. 262670)
HAYLEY REYNOLDS (State Bar No. 306427)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 336-6545
Facsimile:  (415) 449-6469

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRYSTAL LOPEZ, as an individual, on behalf of herself, the general public, and those similarly situated,<br><br>       Plaintiff,<br><br>       v.<br><br>DAVE INC.,<br><br>       Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; FALSE ADVERTISING; FRAUD, DECEIT, AND/OR MISREPRESENTATION; UNFAIR BUSINESS PRACTICES; UNJUST ENRICHMENT; VIOLATION OF THE TRUTH IN LENDING ACT; and VIOLATION OF THE CALIFORNIA DEFERRED DEPOSIT TRANSACTIONS LAW**<br><br>JURY TRIAL DEMANDED |

**INTRODUCTION**

1.     Defendant Dave Inc. operates the Dave app, which claims to give consumers the opportunity to "Get paid up to 2 days early, build your credit history, and get up to $250 advances *without paying a fee.*" In reality, Defendant seeks to skirt applicable financial, banking, and payday lending regulations through a linguistic trick: calling the payments to use its service "tips," "express fees," and a "subscription fee," instead of the cost of borrowing. Semantics aside, Defendant is in the business of loaning money for profit.

2.     Defendant asserts lofty claims – for example, that "Dave is the finance version of David vs. Goliath" and that Dave is the "banking app on a mission to build products that level the financial playing field" – but it fails to disclose to borrowers the true cost of obtaining a cash advance from Defendant. The Dave app is set to demand from users a default "tip" of either 10% or 15% of the cash advance, but that tip usually equates to a very high interest annual percentage rate (APR). Those tips, moreover, are not prorated or linked to the number of days until the borrower's payday. For example, borrowing $100 and paying $5 for it – half of the default tip amount – repayable in four days, is effectively a 456% APR. A 5% tip on a $100 advance payment (repayable 14 days later) is equivalent to a 130% APR. The Dave app gives users the option to tip up to $20 per $100 borrowed, which may compute to an APR in excess of 700%.

3.     From California, Defendant offers its service nationwide. Defendant makes loans in states where payday loans are illegal, without respect to state usury laws, and in contravention of federal lending laws, such as the Truth in Lending Act. Although it does business in California, Defendant does not comply with the California Financing Law and is not a registered lender, and Defendant does not comply with California's Deferred Deposit Transactions Law and is not a registered lender under that law either. Although Defendant offers loans nationwide, Defendant does not comply with lending laws – and is not registered to act as a lender – in any of the other 50 states where it does business.

4.     Plaintiff Krystal Lopez brings this class action Complaint on behalf of herself and the general public to correct Defendant's illegal conduct, to recover the fees Defendant extracted from Plaintiff and other similarly situated persons, to hold Defendant accountable for misleading

and unfair business practices, and to prevent Defendant from misleading the general public about the cost of using its services.

## PARTIES

5.      Plaintiff Krystal Lopez is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Salinas, California. Plaintiff Lopez makes her permanent home in California and intends to remain in California.

6.      Defendant Dave Inc. is a corporation existing under the laws of Delaware, with its principal place of business in West Hollywood, California.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and at least one Class member and Defendant are citizens of different states.

8.      The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of California. Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from services provided to persons in the State of California. Defendant has engaged, and continues to engage, in substantial and continuous business practices in the State of California.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

10.     In accordance with California Civil Code Section 1780(d), Plaintiff concurrently files herewith a declaration establishing that, at various times throughout the class period, she obtained cash advances using the Dave app while located in Salinas, California. (Plaintiff's declaration is attached hereto as Exhibit A.)

11.     Defendant provides Terms of Use on its website at the following address: https://dave.com/terms. The Terms of Use contain a choice of law and jurisdiction provision in Section 27 as follows: "Except for Section 26 which is governed by the FAA, this Agreement and

all Claims are governed by the laws of the State of California, without regard to conflict-of-law rules."

12.     In addition, the Terms of Use purport to require arbitration of all claims. In particular, Section 26 of the Terms of Use state the following (emphasis added):

YOU HAVE READ THIS PROVISION CAREFULLY AND UNDERSTAND THAT IT LIMITS YOUR RIGHTS IN THE EVENT OF A DISPUTE BETWEEN YOU AND US. YOU UNDERSTAND THAT YOU HAVE THE RIGHT TO REJECT THIS PROVISION AS PROVIDED IN SECTION 26.3 BELOW.

26.1 Election to Arbitrate. You and Dave agree that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this Section 26 (the "Arbitration Provision"), unless you opt out as provided in Section 26.3 below. As used in this Arbitration Provision, "Claim" shall include any past, present, or future claim, dispute, or controversy involving you (or persons claiming through or connected with you), on the one hand, and us on the other hand, relating to or arising out of this Agreement, and/or the activities or relationships that involve, lead to, or result from this Agreement, including (except to the extent provided otherwise in the last sentence of Section 26.8 below) the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement. Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution, statute, common law, or principles of equity; or otherwise. Claims include matters arising as initial claims, counter-claims, cross-claims, third-party claims, or otherwise. Please note that you may continue to assert Claims in small claims court, if your Claims qualify and so long as the matter remains in such court and advances only on an individual (non-class, non-representative) basis. The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.

26.2 Applicability of the Federal Arbitration Act; Arbitrator's Powers. This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the Federal Arbitration Act (the "FAA"). The arbitrator will apply substantive law consistent with the FAA and applicable statutes of limitations. The arbitrator may award damages or other types of relief permitted by applicable substantive law, subject to the limitations set forth in this Arbitration Provision. The arbitrator will not be bound by judicial rules of procedure and evidence that would apply in a court. The arbitrator shall take steps to reasonably protect confidential information.

26.3 Opt-Out of Arbitration Provision. You may opt out of this Arbitration Provision for all purposes by sending an arbitration opt out notice to legal@dave.com, within 60 days of the date of your electronic acceptance of the terms of this Agreement. The opt out notice must clearly state that you are rejecting arbitration; identify the Agreement to which it applies by date; provide your name, address, and social security number; and be signed by you. You may send an opt-out notice in any manner you see fit as long as it is received at the specified address within the specified time. No other methods can be used to opt out of this Arbitration Provision. If the opt out notice is sent on your behalf by a third party, such

third party must include evidence of his or her authority to submit the opt out notice on your behalf.

26.4 Informal Dispute Resolution. If a Claim arises, our goal is to learn about and address your concerns and, if we are unable to do so to your satisfaction, to provide you with a neutral and cost effective means of resolving the dispute quickly. You agree that before filing any claim in arbitration, you may submit Claims by sending an email to legal@dave.com at any time.

26.5 Arbitration Procedures. The party initiating arbitration shall do so with the American Arbitration Association (the "AAA") or Judicial Alternatives and Mediation Services ("JAMS"). The arbitration shall be conducted according to, and the location of the arbitration shall be determined in accordance with, the rules and policies of the administrator selected, except to the extent the rules conflict with this Arbitration Provision or any countervailing law. If you have any questions concerning the AAA or would like to obtain a copy of the AAA arbitration rules, you may call 1(800) 778-7879 or visit the AAA's web site at: www.adr.org. If you have any questions concerning JAMS or would like to obtain a copy of the JAMS arbitration rules, you may call 1(800) 352-5267 or visit their web site at: www.jamsadr.com. In the case of a conflict between the rules and policies of the administrator and this Arbitration Provision, this Arbitration Provision shall control, subject to countervailing law, unless all parties to the arbitration consent to have the rules and policies of the administrator apply. The arbitration will be held in the United States county where you live or work, or any other location we agree to.

26.6 Arbitration Fees. If we elect arbitration, we shall pay all the administrator's filing costs and administrative fees (other than hearing fees). If you elect arbitration, filing costs and administrative fees (other than hearing fees) shall be paid in accordance with the rules of the administrator selected, or in accordance with countervailing law if contrary to the administrator's rules. We shall pay the administrator's hearing fees for one full day of arbitration hearings. Fees for hearings that exceed one day will be paid by the party requesting the hearing, unless the administrator's rules or applicable law require otherwise, or you request that we pay them and we agree to do so. Each party shall bear the expense of its own attorneys' fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary herein.

26.7 Appeals. Within 30 days of a final award by the arbitrator, any party may appeal the award for reconsideration by a three-arbitrator panel selected according to the rules of the arbitrator administrator. In the event of such an appeal, any opposing party may cross-appeal within 30 days after notice of the appeal. The panel will reconsider de novo all aspects of the initial award that are appealed. Costs and conduct of any appeal shall be governed by this Arbitration Provision and the administrator's rules, in the same way as the initial arbitration proceeding. Any award by the individual arbitrator that is not subject to appeal, and any panel award on appeal, shall be final and binding, except for any appeal right under the Federal Arbitration Act ("FAA"), and may be entered as a judgment in any court of competent jurisdiction.

26.8 No Class Actions. NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS (INCLUDING AS PRIVATE

Class Action Complaint

ATTORNEY GENERAL ON BEHALF OF OTHERS), EVEN IF THE CLAIM OR CLAIMS THAT ARE THE SUBJECT OF THE ARBITRATION HAD PREVIOUSLY BEEN ASSERTED (OR COULD HAVE BEEN ASSERTED) IN A COURT AS CLASS REPRESENTATIVE, OR COLLECTIVE ACTIONS IN A COURT. Unless consented to in writing by all parties to the arbitration, no party to the arbitration may join, consolidate, or otherwise bring claims for or on behalf of two or more individuals or unrelated corporate entities in the same arbitration unless those persons are parties to a single transaction. ***Unless consented to in writing by all parties to the arbitration, an award in arbitration shall determine the rights and obligations of the named parties only, and only with respect to the claims in arbitration, and shall not (a) determine the rights, obligations, or interests of anyone other than a named party, or resolve any Claim of anyone other than a named party; nor (b) make an award for the benefit of, or against, anyone other than a named party.*** No administrator or arbitrator shall have the power or authority to waive, modify, or fail to enforce this Section 26.8, and any attempt to do so, whether by rule, policy, arbitration decision or otherwise, shall be invalid and unenforceable. Any challenge to the validity of this Section 26.8 shall be determined exclusively by a court and not by the administrator or any arbitrator.

26.9 Survival and Severability of Arbitration Provision. This Arbitration Provision shall survive the termination of this Agreement. If any portion of this Arbitration Provision other than Section 26.8 is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force. If there is a final judicial determination that applicable law precludes enforcement of this Arbitration Provision's limitations as to a particular claim for relief or particular term, then that claim (and only that claim) or that term (and only that term) must be severed from the Arbitration Provision and may be brought in court. If an arbitration is brought on a class, representative, or collective basis, and the limitations on such proceedings in Section 26.8 are finally adjudicated pursuant to the last sentence of Section 26.8 to be unenforceable, then no arbitration shall be had. In no event shall any invalidation be deemed to authorize an arbitrator to determine Claims or make awards beyond those authorized in this Arbitration Provision.

26.10 Judicial Forum for Claims. Except as otherwise required by applicable law, in the event that this Arbitration Provision is found not to apply to you or your Claim, you and Dave agree that any judicial proceeding (other than small claims actions) will be brought in the federal or state courts of Los Angeles County, California. Both you and Dave consent to venue and personal jurisdiction there. We both agree to waive our right to a jury trial.

26.11 WAIVER OF RIGHT TO LITIGATE. THE PARTIES ACKNOWLEDGE THAT THEY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF ANY PARTY ELECTS ARBITRATION PURSUANT TO THIS ARBITRATION PROVISION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY ANY PARTY.

13.     The emphasized portion of section 26.8, which purports to waive consumers' right to seek public injunctive relief is invalid under *McGill v. Citibank* (2017) 2 Cal. 5th 945. The general public stands to benefit from this lawsuit. Members of the general public are deceived by Defendant's deceptive misrepresentations and omissions in marketing and disclosure materials and will be induced to sign up and give Defendant access to their banking accounts without public injunctive relief to prevent its continued wrongdoing.

14.     Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

## SUBSTANTIVE ALLEGATIONS

### Overview of Defendant and the Dave Platform

15.     Defendant was founded in 2017 and went public in January 2022. According to Defendant's 2021 10K filing with the U.S. Securities and Exchange Commission ("SEC", "Dave offers a suite of innovative financial products aimed at helping our Members improve their financial health… To help Members avoid punitive overdraft fees and access short-term liquidity, Dave offers cash advances through its flagship 0% interest ExtraCash product." In 2021, Defendant had approximately $150 million in revenue.

16.     Defendant operates a mobile device application known as Dave. Defendant disclosed in its 2021 10-K that the Dave app has over 10 million downloads and over 6 million users have connected their banking account to the app. The target users for the app are millennials and those living paycheck-to-paycheck. According to Defendant's 2021 10-K, 75% of full-time workers are living paycheck-to-paycheck.

17.     The Dave app has two primary components: (i) Insights, a personal financial management tool and (ii) ExtraCash, a cash advance service. In its Terms of Use, Defendant describes the Insights service as follows: "A suite of services and features you can subscribe to that can assist you in managing your budget, avoiding overdrafts, finding income opportunities and more." Defendant describes its ExtraCash service in its Terms of Use as follows: "***Free*** advances of funds to help you cover expenses that may cause an overdraft in your bank account to ***help you avoid overdraft fees***." (Emphasis added.) Collectively, these services allow users to track their

spending to "avoid liquidity jams that may cause them to overdraft," receive a notification when they are at risk overdrafting, and obtain a short-term cash advance to prevent overdrafts.

18.     Dave prominently markets itself as a service that allows users to avoid paying banks overdraft fees. The ultimate aim of the Dave app is to help people avoid having to fall back on their overdraft as "an expensive form of credit," says Defendant's CEO Jason Wilk, describing it as a sort of "weather forecast" for money management.

19.     The Dave website claims that users can obtain cash advances "without paying a fee:"



20.     Likewise, on Dave's Instagram page it touts that it has "no hidden fees" and allows users to "celebrate payday early:"

**How the Dave app Works**

21.     Once a user downloads the Dave app and signs up for the service, the user is in-
structed to link their app to the checking account where his or her paycheck is deposited. The user
agrees to allow Defendant to access his or her bank account information and provide Defendant
with the direct power to deposit and withdraw funds from his or her bank account.

22.     After a user connects their existing bank account to the Dave app, Defendant ana-
lyzes up to several years of the user's historical spending and income data using its proprietary
machine-learning algorithms. According to Defendant's 2021 10-Q, Defendant has analyzed
more than *30 billion* user transactions. Defendant utilizes users' spending and income data to pro-
vide users budgeting insights such as an upcoming utility bill using the Insights component.
Moreover, Defendant uses the spending and income data to approve the user for a cash advance
using the ExtraCash component. Defendant also uses the user's spending and income data to set
the maximum amount of cash advance that the user may obtain. Once approved, users can imme-
diately request a cash advance.

23.     The Insight component of the Dave platform also warns users about any antici-
pated or pending transactions which may push the user's banking account into a negative balance.
The purpose of this notification is to give users time to act before money is actually taken from
their account. A final warning gives the user the chance to obtain an advance using Extra Cash to
cover an inevitable overdraft. As explained in Defendant's Terms of Use, "If you have subscribed
to the Personal Financial Management Services [Insights] and we detect that you are likely to
have insufficient funds for upcoming transactions in your Linked Account or Dave Banking Ac-
count based on your previous account activity, we will alert you to the possibility of having insuf-
ficient funds through the Mobile App, SMS messages and/or email. Eligible users will then be
offered the opportunity to receive a free Advance to their Linked Account, debit card or Dave
Banking Account, if applicable."

24.     Users that obtain a cash advance can select to pay the advance back manually or
set up automatic payments from a bank account. The automatic payment date is set to the user's
next payday. Defendant has the power to automatically withdraw funds from the user's banking
account when the paycheck is deposited. Defendant explains in its 2021 10-K that "[t]iming of

the repayment of the advance is determined when the advance is made and is based on the esti-mated date that the Member will receive his or her next paycheck, which typically ranges from seven to 10 days from when they apply for an advance…The maximum term for an ExtraCash advance is 14 days."

25.     Dave users are limited to one ExtraCash advance per pay period and may only have one advance outstanding at any given time.

**The Fees That Defendant Collects for Cash Advances**

*Subscription fee*

26.     Although Defendant claims to provide "no fee" cash advances, users actually pay fees in three ways. First, users must pay a monthly $1 subscription fee to have access to the In-sights component of the Dave platform. According to Defendant's March 21, 2022 10-Q, Defend-ant collected approximately $4.2 million in subscription fees from users for the time period January 1, 2022 to March 31, 2022.

27.     Even if a user paid no other fees other than the subscription fee to obtain a cash ad-vance, a $1 fee to obtain a $100 loan with a 14-day repayment period, equates to a 26% APR on that loan.

*Express fee*

28.     Second, although there are no fees associated with the delivery of a cash advance to a user's checking account via ACH, that process can take two to five business days. Users that want to receive their cash advances on an expedited basis (guaranteed within eight hours), must

| Advance Amount | Optional Express Fee |
|---|---|
| $5.00 or less | $1.99 |
| $5.01 to $15.00 | $2.49 |
| $15.01 to $20.00 | $2.99 |
| $20.01 to $74.99 | $3.99 |
| $75.00 to $99.99 | $4.99 |
| $100 to $250.0 | $5.99 |

pay an express fee of between $1.99 and $5.99, depending on the size of the advance taken. Defendant calculates the express fee as follows:

29.     The express fee is deducted from the user's bank account at the time of repayment of the cash advance. Below is an example of the express fee option as presented to a user:



30.     Given that the main purpose of the Dave app is to enable users to obtain cash advances to avoid unexpected overcharge fees, most consumers cannot wait two to five business days to obtain the cash advance. Indeed, Defendant disclosed in its March 31, 2022 10-Q that, during the first quarter of 2022, ***99% of customers who got advances paid an express fee.*** These users paid an average of $5.42 for the express fees. Defendant earned $21 million in revenue from users' payment of express fees in the first quarter of 2022.

31.     When soliciting the payment of an express fee, Defendant does not disclose to borrowers that the express fee that it is a cost of borrowing nor does it disclose to borrowers the express fee computed as an APR.

*"Tips"*

32.     Third, Defendant solicits tips from users, up to 25% of the amount borrowed. Although Defendant claims that the tip is voluntary, it strongly encourages tipping and makes it difficult for users to avoid doing so.  While it is technically possible to leave a $0 tip, Defendant makes it difficult through its user interface and usage of manipulative imagery. Many users believe they are required to leave a tip. For example, Defendant presents users with high default tip amount (either 10% or 15%) and requires users to enter a "custom tip amount" if they wish to leave no tip.

Class Action Complaint

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

33.     Below is an example of the screen that Defendant has shown to users to solicit tips:



34.     In other versions of its tip soliciting screen that was shown to users during the class period, Defendant referred to the tips as an option to "pay it forwards" and "provide[] help to the Dave community." Additionally, at various times during the class period, Defendant has stated that 15% is the "Most Popular" tipping option.

35.     Additionally, when Defendant sends confirmation emails to users about their cash advances, it displays the tip only as a percentage to mask the actual amount of money the user paid in a tip. An example of such a confirmation message is shown below:

1
2
3
4
5
6
7
8
9
10
11
12

**Good news, KRYSTAL!**

Your money is on the way! You can expect it to arrive soon, but it could take up to 8 hrs. I'll text you when it hits your account, details of your cash advance are below.

| | |
|---|---|
| Date | September 19, 2021 |
| Amount | $100.00 |
| Fees | $5.99 |
| Tip percent | 5 |

13    36.    At various times in the class period, Defendant has also partnered with charities,

14  including Trees for the Future and Feeding America, and told consumers that for every percent-

15  age users tip, it would plant the equivalent number of trees (or provide the equivalent number of

16  meals) via its charity partners. Defendant utilized suggestive imagery to guilt users into providing

17  a larger tip. An example of the respective options shown to a user during Defendant's partnership

18  with Feeding America are  shown below:

19
20
21
22
23
24
25
26
27
28

Class Action Complaint



37.     When users are prompted to enter a tip for a loan, Defendant does not disclose to borrowers that the tip is a cost of borrowing or show the tip computed as an APR.

38.     Defendant allows users to adjust the default tip amount in the App settings. However, that amount must be set higher than 0%. If a user wishes to avoid paying a tip each time that she or he obtains a cash advance, the user must adjust the default tip to 0% each time.

39.     Defendant's tactics work. In the first quarter of 2022, Defendant earned $13.9 million in tips according to its March 31, 2022 10-Q. Sixty-four percent of users who got advances left tips in an average amount of $6.93, according to Defendant's 10-Q.

*The Real Cost of Obtaining a Cash Advance*

40.     Assuming a user who wishes to quickly obtain a 12-day cash advance of $100 using the Dave app, she will pay $1 for the subscription fees, $5.99 for the express fee, and assuming a 5% tip, and $5.00. The total amount payment she will pay to obtain the 12-day loan -- $11.99 – equates to an APR of 364. Defendant never discloses the fees to obtain a cash advance to users in the form of an APR.

**Financial and Lending Laws Apply to Dave**

41.    Although Defendant is licensed to do business in California, it is not licensed with the California Department of Business Oversight as a California Finance Lender. Furthermore, Defendant is not registered as a California Deferred Deposit Transactions Lender. Defendant contends it is not required to do so. Defendant refers to the ExtraCash service as "non-recourse cash advances" and claims that it is neither a payday advance or a loan. Among other claims, Defendant asserts that the only consequence of a user failing to repay an advance is that the user will be barred from using the service in the future.

42.    However, the financial service Defendant provides is, in substance, a payday advance or loan, and Defendant is a California Finance Lender and a California Deferred Deposit Transactions Lender. Regarding Defendant's claim that it provides "non-recourse cash advances," Adam Levitin, a banking law professor at Georgetown University, explained that claim amounts to a statement that "We are a loan but we don't want to be regulated as a loan." As another critic of these practices aptly noted: "To use the word 'tip' instead of a usury charge, an interest rate, or a fee, it's just semantics . . . . It's the same thing at the end of the day."

43.    Lauren Saunders, associate director of the National Consumer Law Center, similarly doubted the characterization of this type of service as not being a loan as well as the notion that a "tip" is not a cost of borrowing: "It appears to me they're calling it tips so they don't have to disclose an APR, so they don't have to comply with the Truth in Lending Act . . . . It certainly walks like a duck to me," Saunders said."

44.    With the Dave app, money is advanced and must be repaid. Defendant's business model guarantees the repayment by requiring that all users authorize the company to debit the advanced amount. While Defendant states that it will not initiate legal action to recover sums owed, Defendant's Terms of Use plainly contemplate that it will seek to recoup funds advanced from the authorized account: "We reserve the right to charge your Linked Account, debit card or Dave Banking Account for Advance repayment any time after the later of: (1) we see evidence of income (such as a paycheck) deposited into your Linked Account or Dave Banking Account, or (2) the pay back date selected by you through the Mobile App."

45.     Defendant's Terms of Service thus belie its assertion that it offers a "non-re-course" product. Defendant explicitly reserves the right to satisfy the amount owed from the user's checking account. While Defendant states that it will not initiate legal action to recover sums owed, that does not mean that the cash advance is not a loan; only that Defendant contractu-ally agrees to limit the sources from which it might seek satisfaction for the debt.

46.     Other clauses in Defendant's Terms of Service likewise indict the notion that Dave is not providing loans. Specifically, Defendant's Terms of Service reserve Defendant's right to seek damages for any violation of this term of service: "Dave reserves the right to take various actions against you if we believe you have engaged in activities restricted by this Agreement or by laws or regulations, and Dave also reserves the right to take action to protect Dave, other us-ers, and other third parties from any liability, fees, fines, or penalties. We make take actions in-cluding, but not limited to: 1) updating information you have provided to us so that it is accurate, 2) limiting or completely closing your access to the Mobile App, dave.com or the Services, 3) suspending or terminating your ability to use the Mobile App, dave.com or the Services on an ongoing basis, 4) taking legal action against you (note, as described in Section 9.3 Dave will not take action against you for failure to repay an Advance), 5) holding you liable for the amount of Dave's damages caused by your violation of this Agreement."

47.     The notion that the cash advances are "nonrecourse" is, in any event, irrelevant to whether the advance is properly characterized as a loan. For example, the IRS can consider non-recourse debt as a loan, even if the lender is unable to personally pursue a borrower in case of de-fault. In the company's terms of service, Defendant clearly states that it reserves the right to sue users for violating Defendant's terms of service, which *inter* alia, require users to repay the cash advances, which is a form of recourse.

48.     Further, even though Defendant claims that it will not engage in debt collection activities, Defendant reserves to itself the right to change the Terms of Service governing its Ex-traCash advances at any time, meaning that Dave could effectively nullify its promise that it will not initiate legal action at any time, as follows: "Dave reserves the right to amend this Agreement

at any time and will notify you of any such changes by posting the revised Agreement on its web-site, dave.com."

49.     Additionally, payday loans are illegal in 18 states. Upon information and belief, Defendant is not a registered lender or registered payday lender in California or any other juris-diction. Defendant's Terms of Service provide, however, that California law applies to Plaintiff's and Class members' claims, as follows: "Except for Section 26 which is governed by the FAA, this Agreement and all Claims are governed by the laws of the State of California, without regard to conflict-of-law rules."

50.     Defendant is also required to comply with the Truth in Lending Act ("TILA"). TILA generally applies to creditors who regularly extend consumer credit with a finance charge that is primarily used for personal, family, or household purposes. Defendant's subscription fees, tips, and express fees charged to users of the Dave app that obtain a cash advance constitute a fi-nance charge under Regulation Z, 12 C.F.R. §1026.4(a), which explains that a finance charge is "the cost of consumer credit as a dollar amount. It includes any charge payable directly or indi-rectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit."

## PLAINTIFF'S EXPERIENCES

51.     Plaintiff has used the Dave app since on or about March 2019. She was initially drawn to Dave because its marketing and advertising statements present it as an alternative to short-term lenders, of which she was wary, and as an opportunity to provide a no cost cash advance to avoid overdrafting. Plaintiff has obtained over sixty advances using the ExtraCash feature of the Dave app. On all but two of the transactions, she paid an express fee because she needed to obtain the advance immediately.

52.     Additionally, each time she paid a tip for obtaining the cash advance. Plaintiff did so because she believed she was required to provide one to get the advance. On the first two transactions that Plaintiff entered into, she paid the default 15% "tip" before realizing she could change the tip amount. On the remaining transactions, she paid a 5% "tip."

53.     Plaintiff did not know the APR associated with each of the cash advances she received using Defendant's product. Had Defendant disclosed that amount to her, she would not have requested the cash advance, or she would have paid less (or no) tip to obtain the advance.

54.     Plaintiff continues to desire to use cash advance services, including those marketed and provided by Defendant. If Defendant provided accurate information regarding the APR and fees associated with transactions, she would likely use Defendant's services again. Because Plaintiff is unable to know the APR associated with the cash advances, Plaintiff is unable to rely on the disclosures by Defendant related to the transactions. And because of Defendant's unlawful and misleading practices related to its services, Plaintiff cannot make informed choices between other cash advance services offered by Defendant and other cash advance providers, such as choices based on APR and total costs associated with the transactions.

55.     Plaintiff and members of the Classes have been economically damaged by their use of Defendant's services because the advertising for the services was and is unlawful, untrue and/or misleading under state and federal law; therefore, the services are worth less than what Plaintiff and members of the Classes paid for them and/or Plaintiff and members of the Classes did not receive what they reasonably intended to receive.

## CLASS ALLEGATIONS

56.     Plaintiff brings this class action lawsuit on behalf of herself and a proposed class of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiff seeks to represent the following group of similarly situated persons, defined as follows:

> The Class: All persons in the United States who used the Dave app to obtain a cash advance and paid a tip, express fee, or subscription fee to use the service since July 15, 2018.
>
> The California Subclass: All persons in the State of California who used the Dave app to

obtain a cash advance and paid a tip, express fee, or subscription fee to use the service since July 15, 2018.

57.     This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

58.     Numerosity: Plaintiff does not know the exact size the Class, but she estimates that it is composed of more than 100 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

59.     Common Questions Predominate: This action involves common questions of law and fact to the potential Class because each class member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led consumers to believe that there was no fee to obtain a cash advance using the Dave app and that the APR associated with obtaining a cash advance was not usurious. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Class are:

    a.   Whether Defendant's representations and omissions about its service are false, misleading, deceptive, or likely to deceive;

    b.   Whether Defendant has engaged in unfair, fraudulent, or illegal acts and practices, including but not limited to, its advertising and claims with respect to "tips," interest, and fees charged for use of its service;

    c.   Whether Defendant's advance of funds is properly characterized as a loan and/or deferred deposit transaction;

    d.   Whether Defendant has failed to adequately disclose the cost of borrowing, fees and/or APR associated with the use of the Product;

    e.   Whether Defendant has violated federal lending laws;

    f.   Whether Defendant has engaged in illegal lending, including for failure to properly register pursuant to California's Financing Law and/or California's Deferred

Deposit Transaction Law;

    g.   Whether Defendant has charged usurious interest or fees in connection with its financial products;

    h.   Whether Plaintiff and Class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief; and

    i.   Whether Plaintiff and Class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief.

60.    Typicality: Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each member of the Class were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

61.    Adequacy of Representation: Plaintiff will fairly and adequately protect the interests of all Class members because it is in her best interest to prosecute the claims alleged herein to obtain full compensation due to her for the unfair and illegal conduct of which she complains. Plaintiff also has no interests that are in conflict with, or antagonistic to, the interests of Class members. Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and that of the Class. By prevailing on her own claims, Plaintiff will establish Defendant's liability to all Class members. Plaintiff and her counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class members.

62.    Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the classes will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to

which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the classes may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

63.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action. Any difficulties in the management of this nationwide class will be minimal because California law will apply to all Class members' claims, according to Defendant's Terms of Use. Defendant has, or has access to, address and/or other contact information for the members of the Class, which may be used to provide notice of the pendency of this action.

### CAUSES OF ACTION
### PLAINTIFF'S FIRST CAUSE OF ACTION
**(Violation of the Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq.*)**
**On Behalf of Plaintiff and the California Subclass**

64.     Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint as if set forth herein.

65.     Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of services to consumers.

66.     Plaintiff and the Class members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

67.     Plaintiff and the Class members engaged in "transactions" with Defendant within the meaning of California Civil Code § 1761(e).

68.     Plaintiffs have standing to pursue these claims because they have suffered injury in fact and a loss of money and/or property as a result of the wrongful conduct alleged herein.

69.     Defendant's acts and practices, set forth in this Class Action Complaint, led users

to falsely believe there was no fee to obtain a cash advance using the Dave app and that the APR associated with obtaining a cash advance was not usurious. By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendant has violated and continues to violate California Civil Code §§ 1770(a)(5), (a)(9), and (a)(14). In violation of California Civil Code §1770(a)(5), Defendant's acts and practices constitute improper representations that the services it provides have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code §1770(a)(9), Defendant has advertised services with intent not to sell them as advertised. In violation of California Civil Code §1770(a)(14), Defendant has represented that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

70.     Defendant's concealment, omissions, misrepresentations, and deceptive practices, in violation of the CLRA, were designed to induce and did induce Plaintiffs and Class members to sign up for, use, and pay "tips" and fees to Defendant.

71.     Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the Class will continue to suffer harm. Plaintiff and those similarly situated have no adequate remedy at law to stop Defendant's continuing practices.

72.     Plaintiff provided Defendant with notice and a demand to Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Despite receiving the aforementioned notice and demand, Defendant failed to do so in that, among other things, it failed to identify similarly situated users, notify them of their right to correction, repair, replacement or other remedy, and/or to provide that remedy. Accordingly, Plaintiff seeks, pursuant to California Civil Code § 1780(a)(3), on behalf of herself and those similarly situated class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices.

73.     Plaintiff also request that this Court award her costs and reasonable attorneys' fees

1  pursuant to California Civil Code § 1780(d).

2  **PLAINTIFF'S SECOND CAUSE OF ACTION**
**(False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))**
3  **On Behalf of Plaintiff and the California Subclass**

4  74.     Plaintiff realleges and incorporates by reference the paragraphs of this Class

5  Action Complaint as if set forth herein.

6  75.     Beginning at an exact date unknown to Plaintiff, but within three (3) years

7  preceding the filing of the Class Action Complaint, Defendant made untrue, false, deceptive

8  and/or misleading statements in connection with the advertising and marketing of the Dave app

9  and ExtraCash cash advances.

10  76.     Defendant made representations and statements (by omission and commission)

11  that led reasonable users to believe that there was no fee to obtain a cash advance using the

12  ExtraCash feature of the Dave app and that the APR associated with obtaining a cash advance

13  was not usurious.

14  77.     Plaintiff and those similarly situated relied to their detriment on Defendant's false,

15  misleading and deceptive advertising and marketing practices, including each of the

16  misrepresentations and omissions set forth above. Had Plaintiff and those similarly situated been

17  adequately informed and not intentionally deceived by Defendant, they would have acted

18  differently by, without limitation, refraining from obtaining a cash advance using Defendant's

19  service or paying less money to do so.

20  78.     Defendant's acts and omissions are likely to deceive the general public.

21  79.     Defendant engaged in these false, misleading and deceptive advertising and

22  marketing practices to increase its profits. Accordingly, Defendant has engaged in false

23  advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and

24  Professions Code.

25  80.     The aforementioned practices, which Defendant used, and continues to use, to its

26  significant financial gain, also constitute unlawful competition and provide an unlawful

27  advantage over Defendant's competitors as well as injury to the general public.

28  81.     As a direct and proximate result of such actions, Plaintiff and the other members

have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

82.      Plaintiff seeks, on behalf of herself and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiff, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action will not succeed. Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiff may not be able to establish each Class member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the FAL does not require individualize proof of deception or injury by absent Class members. *See, e.g., Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("restitutionary relief under the UCL and FAL 'is available without individualized proof of deception, reliance, and injury.'"). In addition, Plaintiff and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the FAL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith.

83.      Plaintiff seeks, on behalf of herself and those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

84.      Plaintiff seeks, on behalf of herself and those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general

public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which it is not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**PLAINTIFF'S THIRD CAUSE OF ACTION**
**(Common Law Fraud, Deceit and/or Misrepresentation)**
**On Behalf of Plaintiff and the Class**

85.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

86.     Defendant has fraudulently and deceptively informed Plaintiff that reasonable users to believe that there was no fee to obtain a cash advance using the Dave app and that the APR associated with obtaining a cash advance was not usurious.

87.     These misrepresentations and omissions were known exclusively to, and actively concealed by, Defendant, not reasonably known to Plaintiff, and material at the time they were made. Defendant knew or should have known the true cost of obtaining a cash advance using its service. Defendant's misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether to obtain a cash advance and how much to pay to do so. In misleading Plaintiff and not so informing Plaintiff, Defendant breached its duty to them. Defendant also gained financially from, and as a result of, its breach.

88.     Plaintiff and those similarly situated relied to their detriment on Defendant's misrepresentations and fraudulent omissions. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, declining to obtain a cash advance using the ExtraCash feature of the Dave app or paying less tips or fees to do so.

89.     By and through such fraud, deceit, misrepresentations and/or omissions, Defendant intended to induce Plaintiff and those similarly situated to alter their position to their detriment.

Specifically, Defendant fraudulently and deceptively induced Plaintiff and those similarly situated to, without limitation, use the service to obtain cash advances.

90.    Plaintiff and those similarly situated justifiably and reasonably relied on Defendant's misrepresentations and omissions, and, accordingly, were damaged by Defendant.

91.    As a direct and proximate result of Defendant's misrepresentations and/or omissions, Plaintiff and those similarly situated have suffered damages, including, without limitation, the amount they paid in tips and fees to obtain cash advances.

92.    Defendant's conduct as described herein was wilful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to Plaintiff and those similarly situated.

## PLAINTIFF'S FOURTH CAUSE OF ACTION
**(Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq.*)**
**On Behalf of Plaintiff and the California Subclass**

93.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

94.    Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendant has engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this complaint.

95.    In particular, Defendant has engaged, and continues to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the CLRA as described herein; (ii) the FAL as described herein; (iii) the Truth in Lending Act as described herein; (iv) the California Deferred Deposit Transactions Law as described herein; misrepresenting and/or omitting material facts concerning the Dave app and the ExtraCash feature for cash advances; making misleading statements or omissions regarding the Dave app and the ExtraCash feature for cash advances; engaging in unlawful lending practices; and making unconscionable loans and/or advancing money pursuant to unfair, illegal or unconscionable terms.

96.     In particular, Defendant has engaged, and continues to engage, in unfair and fraudulent practices by, without limitation, the following: fraudulently and deceptively informin consumers that there was no fee to obtain a cash advance using the Dave app and that the APR associated with obtaining a cash advance was not usurious.

97.     Defendant's practices are fraudulent because it misrepresented by omission the true cost of lending and because it failed to disclose the equivalent APRs for its tips or that a borrower's borrowing limit was tied to tipping, deceiving Plaintiff and the Subclass.

98.     Those practices are unlawful because they are unlawful attempts to bypass state or federal lending laws, including the laws cited in this Complaint.

99.     Defendant's acts are also unlawful under the UCL because they violate the California Financing Law, Cal. Fin. Code §§ 22100, *et seq.* Defendant violates that state law because its transactions are in substance consumer loans under Cal. Fin. Code § 22103, and Defendant is engaged in the business of consumer finance lending without obtaining a license from the California Department of Business Oversight. Cal. Fin. Code § 22100(a). Moreover, Defendant makes those unauthorized consumer loans by charging "tips," "express fees," and subscription fees that exceed the statutory maximums proscribed by the California Finance Lending Law.

100.    Plaintiff and those similarly situated relied to their detriment on Defendant's unlawful, unfair, and fraudulent business practices. Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by, without limitation, declining to obtain cash advances using the Dave app or paid less for doing so.

101.    Defendant's acts and omissions are likely to deceive the general public.

102.    Defendant engaged in these deceptive and unlawful practices to increase its profits. Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

103.    The aforementioned practices, which Defendant has used to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

104.    As a direct and proximate result of such actions, Plaintiff and the other Class members have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiff and the Class members lost the amount they paid in tips and fees to obtain cash advances.

105.    As a direct and proximate result of such actions, Defendant has enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

106.    Plaintiff seeks, on behalf of herself and those similarly situated, equitable relief, including the restitution for the premium and/or full price that they or others paid to Defendants as a result of Defendant's conduct. Plaintiff and the Class lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this UCL cause of action because the California Sherman Law does not provide a direct cause of action, so Plaintiff and the Class must allege those violations as predicate acts under the UCL to obtain relief.

107.    Plaintiff also seeks equitable relief, including restitution, with respect to her UCL "fraudulent" prong claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiff may not be able to establish each Class member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or injury by absent class members. *See, e.g., Stearns v Ticketmaster*, 655 F.3d 1013, 1020, 1023-25 (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of UCL claim for entire class). In addition,

Plaintiff and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the UCL imposes no such *mens rea* requirement and liability exists even if Defendants acted in good faith.

108.   Plaintiff seeks, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

109.   Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which they were not entitled. Plaintiff and those similarly situated have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

### PLAINTIFF'S FIFTH CAUSE OF ACTION
**(Unjust Enrichment)**
**On Behalf of Plaintiff and the Class**

110.   Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

111.   Plaintiff and members of the Class conferred a benefit on the Defendant by paying tips and fees to obtain cash advances.

112.   Defendant has been unjustly enriched in retaining the revenues from Plaintiff's and Class members' payment of tips and fees to obtain cash advances, which retention is unjust and inequitable, because Defendant falsely represented that it was providing no fee cash advances, while failing to disclose the APR associated with obtaining the cash advances when the tips and fees were considered. This harmed Plaintiff and Class members because they paid tips and fees

that were unlawful and usurious.

113.    Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution and nonrestitutionary disgorgement of profits to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court. Plaintiff and those similarly situated have no adequate remedy at law to obtain this restitution.

114.    Plaintiff, therefore, seeks an order requiring Defendant to make restitution and pay nonrestitutionary disgorgement of profits to her and other members of the Class.

**PLAINTIFF'S SIXTH CAUSE OF ACTION**
**(Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*)**
**On Behalf of Plaintiff and the Class**

115.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

116.    Congress passed the Truth in Lending Act ("TILA") to ensure consumer borrowers understood the true cost of consumer credit.

117.    As one way to accomplish that goal, TILA requires creditors to clearly and conspicuously disclose to borrowers the accurate and full terms of the legal relationship between creditors and consumer borrowers, including Plaintiff and Class Members.

118.    Defendant is a creditor subject to TILA, as a business that offers or extends credit to consumers, on a regular basis, subject to a finance charge, and primarily for personal, family or household purposes, pursuant to 12 CFR 1026.1(c)(1).

119.    A tip, express fee, and subscription fees are all finance charge pursuant to 12 CFR 1026.4(a) as they are each a "charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit."

120.    Defendant's loans constitute closed-end credit subject to the disclosure requirements of 12 CFR 1026.17. Further, pursuant to 12 CFR 1026.18, regarding the content of disclosures for closed-end credit, creditors must disclose, inter alia, the creditor, amount financed, itemization of amount financed, finance charge, and APR. Defendant makes no disclosures

pursuant to 12 CFR 1026.17-18.

121.    Plaintiff and the Class have been injured and have suffered monetary losses because of Defendant's violations of TILA.

122.    Plaintiff and the Class are therefore entitled to recover actual and/or statutory damages and attorneys' fees and costs from Defendant, as provided by 15 U.S.C. § 1640(a).

**PLAINTIFF'S SEVENTH CAUSE OF ACTION**
**(California Deferred Deposit Transactions Law)**
**On Behalf of Plaintiff and the California Subclass**

123.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

124.    Pursuant to the California Deferred Deposit Transactions Law, Cal. Fin. Code § 23005(a) ("CDDTL"), "(a) A person shall not offer, originate, or make a deferred deposit transaction, arrange a deferred deposit transaction for a deferred deposit originator, act as an agent for a deferred deposit originator, or assist a deferred deposit originator in the origination of a deferred deposit transaction without first obtaining a license from the commissioner and complying with the provisions of this division."

125.    According to the agency that administers the CDDTL, "A deferred deposit transaction is commonly known as a payday loan." Electronic disbursements are a large and growing share of the payday loan business.

126.    While Defendant attempts to distinguish itself from payday lenders, it refers to its service as providing "cash advances through its flagship 0% interest ExtraCash product." Defendant operates in the same manner as a payday loan by lending money to users with fees and a deferral on repayment of the money for a specific period of time.

127.    Defendant therefore provides, in substance, deferred deposit transactions to Plaintiff and Class members.

128.    Upon information and belief, Defendant has not obtained the required license from the California Department of Business Oversight to engaged in deferred deposit transactions, and Defendant provides payday loans that do not comply with the CDDTL's requirements, including,

1   for example, charging fees higher than 15%.

2   129.   Defendant's violation of the CDDTL injures Plaintiff and Class members because

3   Defendant provides loans to Plaintiff and Class members without the consumer protections

4   provided by the CDDTL.

5   130.   Under the CDDTL, Plaintiff and Class members are therefore aggrieved

6   consumers entitled to damages, equitable relief, treble damages, attorney's fees and costs. Cal.

7   Fin. Code § 23064.

8   131.   Because Defendant's violations of the CDDTL are wilful, Plaintiff and Class

9   members are also entitled to punitive damages. Cal. Fin. Code § 23064.

10                                    **PRAYER FOR RELIEF**

11   **WHEREFORE**, Plaintiff, on behalf of herself and those similarly situated, respectfully

12   requests that the Court enter judgement against Defendant as follows:

13   A.   Certification of the proposed Classes, including appointment of Plaintiff's counsel

14        as class counsel;

15   B.   An order temporarily and permanently enjoining Defendant from continuing the

16        unlawful, deceptive, fraudulent, and unfair business practices alleged in this Com-

17        plaint;

18   C.   An award of compensatory damages in an amount to be determined at trial, except

19   for those causes of action where compensatory damages are not legally available;

20   D.   An award of statutory damages in an amount to be determined at trial, except for

21   those causes of action where statutory damages are not legally available;

22   E.   An award of punitive damages in an amount to be determined at trial, except for

23   those causes of action where punitive damages are not legally available;

24   F.   An award of treble damages, except for those causes of action where treble

25   damages are not legally available;

26   G.   An award of restitution in an amount to be determined at trial;

27   H.   An award of nonrestitutionary disgorgement of profits in an amount to be

28   determined at trial;

1    I.      An order requiring Defendant to pay both pre- and post-judgment interest on any

2           amounts awarded;

3    J.      For reasonable attorneys' fees and the costs of suit incurred; and

4    K.      For such further relief as this Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 15, 2022

                                        **GUTRIDE SAFIER LLP**

                                        */s/Seth A. Safier/s/*
                                        Seth A. Safier, Esq.
                                        Marie McCrary, Esq.
                                        Hayley Reynolds, Esq.
                                        100 Pine Street, Suite 1250
                                        San Francisco, CA 94111

## **EXHIBIT A**

I, Krystal Lopez, declare:

1.     I am the Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.     I submit this Declaration pursuant to California Civil Code § 1780(d), California Code of Civil Procedure § 2015.5, and 28 U.S.C. § 1746.

3.     I signed up for the Dave app on or about March 2019 while located in Salinas County, California. Since then, I have used the Dave app to request and obtain multiple advances using the ExtraCash feature. I paid subscription fees, express fees and tips to obtain the advances. I requested all, or substantially all, the advances while I was located in Salinas County, California.

I declare under penalty of perjury under the laws of California and of the United States of America that the foregoing is true and correct.

Executed in Salinas, California on     7/11/2022

DocuSigned by:

Krystal Lopez
247638507D0041F...

Krystal Lopez

DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION